WILLIAM POOL *versus* JOHN HATHAWAY.

Where there is a conveyance by the mortgagee to one who had previously acquired a right in the equity of redemption, the rule is well established, that the mortgage will not be considered as extinguished, when it is for the interest of the grantee to have it upheld, unless the intention of the parties to extinguish it is apparent.

Where the conveyance from the mortgagee to the purchaser of the equity of redemption concluded thus; — "meaning and intending hereby to convey all the right, title and interest now vested in me by virtue of any and all conveyances heretofore made to me by I. & J. C. Pool," the mortgagors; *it was held,* that no intention to discharge the mortgage appeared, but the reverse.

WRIT of entry to recover a tract of land and wharf in Calais. Both parties claimed title under Isaac Pool and John C. Pool.

On Feb'y 1, 1834, I. and J. C. Pool mortgaged the premises to B. F. Copeland, C. Copeland and N. P. Lovering, to secure a large sum of money then due, the deed having been recorded May 28, 1834. By another deed of the same date, recorded at the same time, the same grantors acknowledged that the same grantees had taken peaceable possession of the mortgaged premises for condition broken. By an indorsement on this deed, dated Dec. 24, 1836, the time for redemption was extended to July 1, 1838. By quitclaim deed, dated May 21, 1838, and recorded the 28th of the same month, B. F. & C. Copeland and Lovering conveyed all their interest in the premises to John Hathaway, the tenant, the descriptive part concluding with " meaning and intending hereby to convey all the right, title and interest now vesting in us by virtue of any and all conveyances heretofore made to us by Isaac and John C. Pool." On Nov. 2, 1837, the mortgage deed was assigned to the tenant by the mortgagees.

On Dec. 6, 1836, J. Ellis & al. brought their suit against I. & J. C. Pool, and attached their right of redeeming the premises, recovered judgment, and caused the equity to be sold, which was purchased by the demandant, and a deed was given by the officer to him, dated August 31, 1837, and recorded March 7, 1838. The course of proceedings was regular

in the sale of the equity, and it was taken on the execution within thirty days after judgment.

The demandant called John C. Pool, and he testified, that I. & J. C. Pool, in August, 1838, conveyed the premises to Isaac Jackson, and agreed to pay off the mortgage, but did not do it, and Jackson informed them that he had done so, and charged the Pools with the amount thereof in account, and they gave their notes to Jackson therefor. On the cross-examination of this witness, he was asked, if they did not convey the premises to the tenant instead of to Jackson. This was objected to by the demandant. SHEPLEY J. then holding the Court, ruled that the evidence might be admitted merely as explanatory of the statement of the witness, that they had sold to Jackson, and not as evidence of title in the defendant.

The tenant introduced the depositions of B. F. Copeland and N. P. Lovering, from which it appeared, " that at the time of the conveyance to Hathaway, there was due on the mortgage, 7680 dollars, and that the tenant paid them 4648,02, and 1548,02, by Isaac Jackson."

A default or nonsuit was to be entered by consent, as the Court might direct.

*Bridges* argued for the demandant, and contended that the mortgagees released the premises to the tenant without any assignment of the securities, and that the legal effect of the proceedings was to merge and discharge the mortgage. Whatever the tenant purchased of the Pools was defeated by the attachment and levy. The mere release of the mortgagee to the tenant, who was not in possession, could give him no title, and could only operate as a discharge. When the mortgage is once merged, it cannot be revived by any subsequent proceedings. The tenant can stand in no better situation, than the mortgagees, and they could not hold under the mortgage, for their debt has been paid off by the Pools. 6 Pick. 492; 8 Pick. 143; 14 Pick. 98; 1 Hill. Abr. 309; 2 Bl. Com. 323; 4 Kent, 194; 2 Story's Eq. 291; 14 Pick. 374; 15 Pick. 82.

*Downes & Cooper* argued for the tenant, and among other points, contended that as the mortgagees had entered for con-

dition broken, the only remedy for the mortgagors, or those claiming under them, was by bill in equity, even if it were true that the debt had been paid. This writ of entry could not be maintained. *Parsons* v. *Wells*, 17 Mass. R. 419; *Howe* v. *Lewis*, 14 Pick. 330.

The fair construction of the deed to the tenant shows, that it was intended as an assignment of the mortgage, and not a discharge of it. It is a well established principle, that a mortgage is not extinguished, if it be for the interest of the assignee to uphold it. *Freeman* v. *Paul*, 3 Greenl. 260.

If it is the interest of the party to uphold a mortgage, an intent to do so will be presumed, and no merger will take place. Shep. Touch. 83; Co. Lit. 301; Coke's R. 35; 3 Pick. 482; 3 Johns. C. R. 395; 6 Johns. C. R. 417; 8 Mass. R. 491; 15 Mass. R. 278; 5 Pick. 180; 4 Pick. 405; 14 Pick. 375; 2 Shepl. 9.

But if the tenant is but the equitable owner of the mortgage, the action cannot be maintained; for the purchaser of an equity of redemption cannot aver seizin against any other person than the execution debtor, and his immediate tenants. *Foster* v. *Mellen*, 10 Mass. R. 421.

The opinion of the Court was drawn up by

Shepley J. — The demandant alleges, that by an attachment made by Ellis and others, and by a subsequent seizure and sale on execution, he acquired a title to the equity, which the Pools had to redeem the estate mortgaged by them to Copelands and Lovering. And if he thus became the owner of the equity of redemption nothing could pass by the deed, by which the Pools attempted to convey the same to the tenant; who would not therefore become the owner of the estates both of the mortgagor and mortgagee ; and the doctrine of merger could not be applied. And if the demandant did not thus acquire a title to the equity, he has no title. Even if the tenant could be considered as acquiring the equity of redemption by the conveyance from the Pools to himself on the second of November, 1837, and the title of the mort-

gagees by the deed of Copelands and Lovering on the twenty-first of May, 1838, the rule is well established, that the mortgage would not be considered as extinguished, when it was for his interest to have it upheld, unless the intention of the parties to extinguish it was apparent. But the deed from Copelands and Lovering to the tenant, so far from disclosing such an intention, undertakes to convey the estate to the tenant, who would thereby become the assignee of the mortgage. After a release of the title that deed contains this clause, "meaning and intending hereby to convey all the right, title and interest now vested in us by virtue of any and all conveyances heretofore made to us by Isaac Pool and John C. Pool." It is not necessary therefore to inquire, whether the mortgage was foreclosed so as to prevent the demandant from acquiring any title by the sale of the equity of redemption, for if he did thus acquire the title he cannot maintain this action.                              *Plaintiff nonsuit.*